```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____
DANIEL LOPEZ, Jr.,
                    Plaintiff,                 06-CV-0227T

v.                                             DECISION
                                               and ORDER
JOANNE B.BARNHART,
Commissioner of Social Security,

                    Defendant.
_____
```

## INTRODUCTION

Plaintiff, Daniel Lopez ("Lopez") filed this action pursuant to the Social Security Act, codified at 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for Disability Insurance Benefits ("Disability"), and Supplemental Security Insurance ("SSI"). On December 28, 2006, the Commissioner moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure and on March 7, 2007, plaintiff cross-moved for judgment on the pleadings.

For the reasons that follow, I find that substantial evidence supports the decision of the ALJ. Accordingly, plaintiff's motion for judgment on the pleadings is denied and defendant's motion for judgment on the pleadings is granted.

## BACKGROUND

Plaintiff is a 37 year old man with an eleventh grade education. (Tr. 94, 106) In February, 2005, Lopez received his General Equivalency Diploma. (Tr. 149) He alleges that he has been

disabled since October 20, 2003 because of back pain[1]. (Tr. 84, 266)  On February 27, 2004, Lopez filed an application for Disability and SSI. (Tr. 84, 101-102) His application was denied initially on May 7, 2004. (Tr. 41-44) Plaintiff requested a hearing which was held on October 12, 2005 at which plaintiff appeared before an Administrative Law Judge ("ALJ") and was represented by counsel.  (Tr. 250-307) By decision dated November 17, 2005, the ALJ found Lopez was not disabled. (Tr. 12-20)  Plaintiff requested review by the Appeals Council.  The decision of the ALJ became final when the Appeals Council denied review on March 10, 2006. (Tr. 5-7)  Plaintiff commenced this action on April 6, 2006 claiming that he was disabled by low back and leg pain and side effects of prescription medications.

A.   Medical Background

Lopez claimed that he experienced "fractures in [his] back and had bones out of place" that caused him pain and prevented him from standing for long periods of time. (Tr. 101) He had longstanding back pain stemming from a stabbing in his back at the age of 13. (Tr. 228)

A Physical Residual Functional Capacity Assessment completed on May 7, 2004 by Donna Curtis indicated that plaintiff could occasionally lift and carry up to 20 pounds, frequently lift or carry 10 pounds, stand or walk about six hours in an 8 hour workday and sit for about six hours in an eight hour workday. (Tr. 134)

---

[1] Although plaintiff's initial application asserted an onset date of February 19, 2004, plaintiff amended his application to October 20, 2003.

Further, plaintiff was found to be unlimited in his ability to push or pull.  The assessment was based on plaintiff's MRI of November 5, 2003 which showed "minimal joint effusion" in his right shoulder, a cervical spine MRI showing disk herniation and annular bulge and an x-ray of February 18, 2004 showing "defects in the pars interarticularis of L5 without displacement of the vertebral body." (Tr. 134) Plaintiff showed postural limitations of occasional limitations on his ability to climb and to stoop. (Tr. 135)

Plaintiff began treatment with Dr. Thomas Cowan in December 2003 who diagnosed plaintiff with right cervical radiculopathy based on a physical examination and plaintiff's complaints of painful neck extension, numbness in the right hand fingers, pain, impingement signs in the right shoulder and limited scapular mobility. (Tr. 162) He recommended plaintiff stay out of work temporarily and start with physical therapy. (Tr. 162)  An MRI of January 12, 2004 showed "small posterior and central disc herniation" at C3-4 causing "mild compression of thecal sac" and annular bulges at C4-5, C5-6 and C6-7 also causing "mild compression of thecal sac." (Tr. 160) After noting that plaintiff's cervical and shoulder ranges of motion were within functional limits, Dr. Cowan prescribed physical therapy and recommended plaintiff could return to work. (Tr. 157)

Soon after returning to work, Lopez experienced a sudden increase in low back pain for which he sought treatment at Millard Fillmore Hospital Emergency Room on February 18, 2004.  X-rays

3

taken at the time showed he had "defects in the pars interarticularis of L5 without significant displacement of the vertebral body." (Tr. 170)

Plaintiff was examined by Dr. Samuel Balderman at the direction of the Division of Disability Determinations on April 9, 2004. Plaintiff claimed that his back caused him pain for more than 15 years and that the pain was non-radiating in nature. (Tr. 175) Plaintiff showed lumbar spine flexion of 70 degrees, full lateral flexion and full rotary movement bilaterally. Dr. Balderman concluded that plaintiff had a good prognosis and that he suffered from "minimal to mild limitations in bending and lifting due to some early degenerative disease of the lumbar spine." (Tr. 177)

An MRI of the lumbar spine taken on June 3, 2004 showed that plaintiff had "Grade 1 anterolisthesis of L5 on S1 with probably bilateral spondylolysis" and "bilateral foraminal narrowing." (Tr. 196) Dr. Michael Geraci of Buffalo Spine and Sports treated Lopez with a steroid injection at L5 in September 2004. (Tr. 198) Dr. Geraci also recommended that plaintiff undergo rehabilitative physical therapy. (Tr. 199) After one month of therapy, plaintiff found no relief. (Tr. 228)

Dr. Christopher Hamill began treating Lopez in November 2004 for low back pain. Dr. Hamill recommended back surgery for transforaminal lumbar interbody fusion, L5-S1 non-segmental spinal insrumentation, L5-S1 posterior lateral fusion and left iliac crest bone graft harvest. The operation was performed successfully on January 11, 2005. (Tr. 200-201)

Lopez complained of continued pain during a post operative examination with Dr. Hamill on April 27, 2005. (Tr. 233) Dr. Hamill found that plaintiff's motor strength was 5 out of 5 for all muscle groups in his lower extremities and could not explain the amount of pain. He directed an MRI be performed to determine the cause of the pain. (Tr. 233) The MRI of June 8, 2005 showed that there were no disc problems. (Tr. 238) Dr. Hamill explained that there was nothing else surgically to be done and that plaintiff should return to rehabilitation with Dr. Koenig. (Tr. 239)

Lopez sought treatment on September 22, 2005 for back and leg pain associated with numbness with Gosy & Associates Pain Treatment Center. (Tr. 240) Lopez was taking Wellbutrin for pain related depression as well as Baclofen and Hydrocodone for the pain. (Tr. 240) Dr. Gosy advised plaintiff that he should consider vocational retraining. (Tr. 244) Plaintiff testified at the hearing that he no longer was taking Baclofen. (Tr. 279)

B.  Non-Medical Background

Plaintiff's prior work experience includes work in production and assembly from June, 1991 through October, 1993 and later as a printing press operator at a box plant from July, 1996 through February 19, 2004. (Tr. 114, 215) As a printing press operator, Lopez lifted bundles of boxes and adjusted pressures on the machine. (Tr. 109) The job involved bending, lifting and standing for eight hours per day. (Tr. 109)

Lopez claimed that he limited his driving because it caused pain but that he did drive his children to and from school each

day. (Tr. 117) He relied on his wife to prepare meals but he was able to do laundry because it did not involve standing for long periods of time. He also does the food shopping for the household twice a week. (Tr. 119-120)

Lopez used the assistance of a cane to walk at the hearing. (Tr. 284) When asked why he uses it, he testified that he finds that the cane relieves the pressure. When plaintiff walked, he experienced pain in his lower back. (Tr. 284)

Plaintiff testified that he is unable to sleep more than three to four hours at night. (Tr. 286) He sleeps during the day approximately three hours. (Tr. 285-287) Lopez can bathe and dress himself and make a sandwich or heat soup for himself. (Tr. 287) He limits how much he drives in a week to three to four hours total. (Tr. 287)

He also testified that he was unable to do much housework but he was able to wash dishes for short times and take his wife to the grocery store. (Tr. 288-289) Lopez is able to go to a restaurant about once a month and visit family once a week. (Tr. 291) Lopez attended parent conferences at school for his children and flew to Puerto Rico within the previous three years. (Tr. 293)

A vocational expert, Julie Andrews, testified at the hearing. (Tr. 24) Ms. Andrews characterized plaintiff's prior work experience as polishing and grinding rather than assembly. (Tr. 299) Given the hypothetical of a younger person of the same age, education and work experience as plaintiff who would be limited to no more than the light category of exertion with only an

6

occasional need to crawl, the need to avoid all use of ropes, ladders and scaffolding, a need for a sit/stand walk option, to avoid all exposure to dangerous machinery and unprotected heights, and limit work to simple routine and repetitive tasks, Ms. Andrews testified that there were occupations available in the local economy for a person with these limitations. (Tr. 300-302) Ms. Andrews identified such jobs available to this individual as a small product assembly job, a mail clerk, a label pinker and an order clerk. (Tr. 302-303)

## DISCUSSION

Pursuant to 42 U.S.C.§ 405(g), the factual findings of the Commissioner are conclusive when they are supported by substantial evidence. Rivera v. Harris, 623 F.2d 212, 216 (2d Cir. 1980). A disability is defined as

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual's physical or mental impairment is not disabling under the Act unless it is:

> of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.

42 U.S.C. §§ 423(d)(2)(A), 1383(a)(3)(B). Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).

In evaluating disability claims, the Commissioner is required to use the five step process promulgated in 20 C.F.R. §§ 404.1520 and 416.920. First, the Commissioner must determine whether the claimant is engaged in any substantial gainful activity. Second, if the claimant is not so engaged, the Commissioner must determine whether the claimant has a "severe impairment" which significantly limits his ability to work. Third, if the claimant does suffer such an impairment, the Commissioner must determine whether it corresponds with one of the conditions presumed to be a disability by the Social Security Commission. If it does, then no further inquiry is made as to age, education or experience and the claimant is presumed to be disabled. If the impairment is not the equivalent of a condition on the list, the fourth inquiry is whether the claimant is nevertheless able to perform his past work. If he is not, the fifth and final inquiry is whether the claimant can perform any other work. The burden of proving the first four elements is on the claimant, while the burden of proving the fifth element is on the Commissioner. Bush v. Shalala, 94 F.3d 40, 44-45 (2d Cir. 1996).

Here, the ALJ followed the five step procedure. In his decision dated November 17, 2005, the ALJ found that plaintiff (1) had not engaged in substantial gainful activity since the onset date of October 20, 2003; (2) suffered from degenerative disc disease of the lumbar and cervical spine with a history of spinal fusion surgery that is a severe impairment; (3) did not have an impairment that meets or equals one of the listed impairments

listed in Appendix 1, subpart P, Regulation No. 4; (4) did not have the residual functional capacity to perform his past relevant work as a print press helper, a polisher helper or a grinder; and (5) there are a significant number of jobs in the national economy that he could perform consisting of light exertion work such as small products assembler, mail clerk and sedentary work such as label printer and an order clerk. (Tr. 13-19) The ALJ specifically found that plaintiff's shoulder pain would not have more than a minimal effect on work related activities and is therefore not severe. (Tr. 13)

Plaintiff alleges that the ALJ did not have substantial evidence to support his finding that plaintiff was not disabled. He contends that (1) the ALJ failed to address the entirety of the medical records and instead selected aspects of the record to favor his decision; (2) the ALJ incorrectly relied on plaintiff's demeanor at the hearing in his decision making; (3) the vocational expert testimony failed to rely on a hypothetical that realistically portrayed plaintiff's abilities; and (4) the ALJ improperly found plaintiff to be not credible.

I find that there is substantial evidence to support the ALJ decision. The ALJ decision reflects consideration of the totality of the record in assessing plaintiff's condition and his assessment regarding plaintiff's condition is consistent with the treating physicians' reports. Indeed, the ALJ incorporates the plaintiff's testimony and the records of his treating physicians in making his finding that plaintiff had a more restrictive condition than

9

Dr. Balderman, the independent examiner, concluded.  Dr. Hamill noted in November 2004 that plaintiff's motor strength was full for all lower extremity muscle groups, straight leg raises were normal, gait and coordination were normal and his pain medication was over the counter Ibuprofen. (Tr. 228-230)  After surgery, Dr. Hamill continued to report that strength in all muscle groups in the lower extremities was full and the June 8, 2005 MRI showed no disc problems. (Tr. 236-238)  In September, 2005, plaintiff's treatment records from the pain treatment center continued to reflect that plaintiff had negative straight leg raises, he could heel toe and tandem walk normally and that he had 30% of normal extension in his back.  Although the center prescribed medications for plaintiff's claims of pain, Lopez was specifically directed to vocational retraining. (Tr. 244) In fact, no treating physician precluded plaintiff from work activity.

Plaintiff's assertions that the ALJ's credibility finding was not supported by substantial evidence are not founded.  The ALJ's decision considered plaintiff's claims of pain but found that plaintiff's subjective allegations of disabling pain are not supported by the opinions of the treating physicians, the consultative physician and plaintiff's activities of daily living. (Tr. 16)  The ALJ took into consideration the effect the pain medications would have on the types of work plaintiff could perform in his hypothetical to the vocational expert. Plaintiff testified that he was able to drive his children to school, his wife to the grocery store, prepare simple meals, and handle his personal care.

Moreover, he admitted that he flew to Puerto Rico in the past few years. The ALJ took note that although plaintiff attended the hearing using a cane, it was not prescribed by any treating physician. To the extent that plaintiff argues that the ALJ improperly relied on plaintiff's demeanor, it is clear that the ALJ considered that fact along with other objective medical evidence and plaintiff's testimony concerning his daily activities in determining that plaintiff was not disabled.

## CONCLUSION

I find that the ALJ's conclusion that plaintiff is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record. Accordingly, the decision of the Commissioner denying plaintiff's disability claim is affirmed, the plaintiff's motion for summary judgment is denied, the defendant's motion for judgment on the pleadings is granted and the complaint is dismissed.

ALL OF THE ABOVE IS SO ORDERED.

s/Michael A. Telesca
MICHAEL A. TELESCA
United States District Judge

DATED:   Rochester, New York
         November 29, 2007